IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

XZAIBIA LAVON WOOTEN,

    Plaintiff,

v.                                        Case No. 3:21-cv-416/MCR/ZCB

CAPT. T. MCCRANIE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case brought under 42 U.S.C. § 1983. Plaintiff has sued five corrections officers with the Florida Department of Corrections ("FDOC Defendants") and one nurse. Plaintiff claims the FDOC Defendants violated the Eighth Amendment by using excessive force, and he claims the nurse violated the Eighth Amendment by acting with deliberate indifference to a serious medical need. The FDOC Defendants have moved for summary judgment. (Doc. 69). Plaintiff has responded in opposition. (Doc. 76). For the reasons below, the FDOC Defendants' motion for summary judgment should be denied.

### I.    Background

**A.    Plaintiff's version of events**

On December 15, 2020, Plaintiff was an inmate at Santa Rosa Correctional Institution (SRCI). (Doc. 1 at 6). At approximately, 10:15 a.m. Officer Mosquerri

1

(a non-party to this case) approached Plaintiff's cell to collect legal mail. (*Id*.). Instead of simply collecting the mail, Officer Mosquerri threatened Plaintiff and ordered for his cell to be "rolled." (*Id*.). Plaintiff demanded to speak with the supervising officer, Defendant McCranie. (*Id*.). When Defendant McCranie arrived, Plaintiff complained that Officer Mosquerri was not following proper procedure. (*Id*.). Defendant McCranie responded by telling Plaintiff, "since you don't want to come out and fight him I'm going to let them beat your ass." (*Id*.).

A cell extraction team then arrived at Plaintiff's cell. (*Id*. at 7). Defendant McCranie ordered Plaintiff to "submit to restraints," and he responded, "yes ma'am I'll submit." (*Id*.). Plaintiff started to take off his shirt when Defendant McCranie ordered the cell door to be opened. (*Id*.). As the officers opened the cell door, Plaintiff laid face down on the floor. (*Id*.). Defendant Bishop entered the cell with a clear shield in his hands, jumped on top of Plaintiff, rolled him over, and then began punching him in the face. (*Id*.). As Plaintiff tried to evade Defendant Bishop's punches, Defendant Manners started hitting him in the face "with handcuff restraints that he had wrapped around his gloved hands like they were brass knuckles." (*Id*.). Rather than intervene to end the excessive force, Defendants Simmons and Burns stood in the way of the hand-held camera to prevent it from capturing what occurred. (*Id*.). (Doc. 1 at 8). Plaintiff then blacked out from a "punch to the head" by Defendant Manners. (*Id*.).

Plaintiff regained consciousness to more punches and kicks. (*Id*. at 8). Defendant Manners then took Plaintiff's thumb, index finger, and middle finger and "spilt them in half" such that Plaintiff could hear his bones cracking. (*Id*.). Next, Defendant Simmons choked Plaintiff with one hand while slamming his head against the floor with the other. (*Id*.). Plaintiff pleaded with Defendants to stop when Defendant Manners yelled "weapon." (*Id*.). Plaintiff denies having a weapon, and he claims a weapon was planted in his cell by Defendant Manners. (*Id*.). A "spit shield" was then placed over Plaintiff's head, and Defendants Burns and Manners threatened to harm Plaintiff if he filed a grievance about the incident. (*Id*.). Defendants escorted Plaintiff out of his prison cell, donned with a "transport hood" to hide Plaintiff's swollen face from security cameras. (*Id*.).

Plaintiff was then taken to medical, where Plaintiff alleges that he continued to be abused by Defendants Bishop and Simmons who punched and kneed him. (*Id*.). Plaintiff reported to the prison nurse (Defendant DeGroat) that his hand and fingers were broken, that he could not see out of one of his eyes, and that he felt dizzy. (*Id*. at 9). Rather than provide treatment, Defendant DeGroat said "he looks fine to me" and "isn't that what happens when you get your ass beat?" (*Id*.).

Next, Plaintiff was returned to his cell where his clothing was cut off, and he was left in his boxer shorts without a mattress or blanket. (*Id*.). Plaintiff claims that he had injuries to his face and hands. (*Id*.). To corroborate his claim of injuries,

3

Plaintiff has submitted a statement from another inmate, Chauntavius Jackson, who says he saw Plaintiff with an "abrasion, laceration, bleeding and swelling from right eye socket, right and temple beyond normal swelling" and a left hand "which looked disfigured at the fingers" such that "you can see it was broken just by looking at it." (Doc. 76-1 at 1). After being denied medical treatment "for days" (Doc. 1 at 9), Plaintiff saw Dr. Rodriguez who ordered that his left hand be x-rayed on December 23, 2020. (Doc. 76-1 at 16). The x-ray showed that Plaintiff's left hand was fractured at the "distal 2nd metacarpal." (*Id*.). A cast was placed on Plaintiff's hand to treat the fracture. (*Id*. at 22, 23, 27).

**B.    FDOC Defendants' version of events**

The FDOC Defendants tell a different story about what happened. Their version of events is as follows. At approximately 10:15 a.m. on December 15, 2020, Defendant McCranie notified the SRCI Warden that Plaintiff was refusing to be strip-searched and would not exit his cell as directed. (Doc. 69-1). Because a nurse had stated Plaintiff had a medical condition that prevented the use of chemical agents against Plaintiff, the Warden authorized the use of a Forced Cell Extraction Team ("FCET") to remove Plaintiff from his cell and render him compliant. (*Id*.). The FCET was comprised of Defendants Bishop, Manners, Burns, and Simmons, as well as Officer Cheek (a non-party). (Docs. 69-3 at 2, 69-7 at 1). Defendant McCranie supervised the FCET's interactions with Plaintiff. (Doc. 69-3 at 1). The FCET

entered Plaintiff's cell and ordered him to submit to a strip search and restraints. (Doc. 69-3). Plaintiff refused. (*Id.*). Defendant Bishop then applied downward pressure with his shield to direct Plaintiff to the cell floor. (Doc. 69-4 at 1). Once on the floor, Defendant Bishop noticed that Plaintiff possessed a homemade weapon. (*Id.*). Defendants Simmons, Burns, and Officer Cheek applied force to Plaintiff's upper extremities to retrieve the weapon. (Docs. 69-5, 69-7). They subsequently applied leg restraints and Plaintiff quit resisting, which resulted in an end to the use of force. (Doc. 69-5). Plaintiff was then taken to medical for a post use-of-force examination by Defendant DeGroat. (Doc. 69-3 at 2). Upon examination, Defendant DeGroat noted that Plaintiff had a hematoma to the left eye, but no other injuries were observed. (*Id.*).

## II. Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. When deciding whether to grant summary judgment, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together

with any affidavits and other evidence in the record "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988); Fed. R. Civ. P. 56(c)(1)(A).

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When answering that question, courts must view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). At the summary judgment stage, the judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### A. There are genuine issues of material fact regarding Plaintiff's Eighth Amendment excessive force claim.

The FDOC Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim. To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477 U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment excessive force claims. Prison officials

violate the Eighth Amendment prohibition against cruel and unusual punishment if they apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" in Eighth Amendment excessive force cases "is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

Plaintiff alleges that FDOC Defendants used excessive force by repeatedly physically assaulting him without adequate provocation. He alleges he was punched, kneed, hit with handcuff restraints, choked, slammed to the floor, and that his hand was broken by having his fingers forcibly split apart. Plaintiff claims those actions were unnecessary because he was compliant with commands given by the officers.

Not so according to FDOC Defendants. They claim to have used only as much force as was necessary to obtain compliance from Plaintiff after he refused to obey orders. FDOC Defendants rely on use of force reports to support their version of events. The use of force reports describe Plaintiff as being non-compliant and resisting their commands.

The Court has been provided with no video evidence of the incident. Thus, what the Court is left with is Plaintiff's allegations on the one hand and FDOC

7

Defendants' statements on the other. Plaintiff says the incident unfolded in one way, and FDOC Defendants claim it unfolded in an entirely different way. Clearly, one side is telling the truth and the other is not. At the summary judgment stage, however, it would be inappropriate for the Court to make credibility determinations or to weigh the evidence. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."). That is true even if the Court "believes that the evidence presented by one side is of doubtful veracity" because "it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson,* 477 U.S. at 255.

Because there is conflicting information in the record on material facts, the Court cannot grant summary judgment in favor of FDOC Defendants. There are disputes about what precipitated the use of force, and there are disputes about how much force and what type of force was used by FDOC Defendants. There are also disputes about what, if any, injuries resulted from the force. Those disputes are about material facts, as opposed to minor or trivial details. Viewing the evidence in the light most favorable to Plaintiff, FDOC Defendants unnecessarily and repeatedly

8

struck him, despite his willingness to comply with their commands. If things happened as Plaintiff says they did, then a reasonable jury could find that the amount of force used was excessive and that Plaintiff suffered injuries as a result.

Although a court may grant summary judgment where the "opposing parties tell two different stories, one of which is blatantly contradicted by the record," *Scott*, 550 U.S. at 380, this is not such a case. The Court has been provided with neither video footage nor any statements from non-interested eyewitnesses to the incident. There is evidence in the record showing Plaintiff suffered injuries because of the incident. Additionally, Plaintiff has done more than rest on the allegations in his complaint—he has submitted a summary judgment opposition (complete with numerous documents obtained in discovery) that argues there are disputed issues of material fact in this case. There is nothing in the record that so blatantly contradicts Plaintiff's version of events that no reasonable jury could be expected to believe it. *See Sears v. Roberts*, 922 F.3d 1199, 1208-09 (11th Cir. 2019) (finding that summary judgment could not be granted in favor of corrections officers when there were no video recordings and the evidence in the record consisted of statements from the defendants and contradictory statements by the plaintiff).

None of the cases cited by FDOC Defendants alter that conclusion. First up is *Miles v. Jackson*, 757 F. App'x 828 (11th Cir. 2018). In that case, the prisoner admitted being non-compliant and evasive. Here, however, Plaintiff claims to have

9

been compliant and denies resisting FDOC Defendants' efforts to move him from one place to another. (Docs. 1 at 7; 76 at 1-2; 76-1 at 1). Next is *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017). *Reed* is unhelpful because it involved a district court's finding that a prisoner was not credible after a bench trial. *Id.* at 618. But the current case is at the summary judgment stage and not post-bench trial.

Similarly unpersuasive is FDOC Defendants' reliance on *Oliver v. Warden*, 761 F. App'x 960 (11th Cir. 2019). In *Oliver*, there was video evidence clearly supporting the defendants' version of events. *Id.* at 965. On the contrary, the Court has no video evidence supporting the FDOC Defendants' version of events in this case. The next case cited by FDOC Defendants is *Smith v. Secretary, Department of Corrections*, 524 F. App'x 511 (11th Cir. 2013). There, the court accepted Plaintiff's version of events as true but concluded that the amount of force alleged (i.e., twisting arms upwards and pressing against the wall) was an unactionable *de minimis* use of force. That is not what we have here. Plaintiff has alleged more than *de minimis* force. *Id.* at 513. Indeed, FDOC Defendants' motion for summary judgment does not argue that Plaintiff has only alleged a *de minimis* use of force.

Finally, FDOC Defendants cite *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014). But that case does not help them. *Howard* involved a situation where the plaintiff's version of events was "blatantly contradicted by the record," while the defendants "presented evidence" establishing that force was applied to maintain and

10

restore discipline. *Id*. at 695. That is not the situation here—FDOC Defendants have not submitted evidence that is sufficient to "blatantly contradict" Plaintiff's allegations. Instead, the evidence submitted by FDOC Defendants consists of their own statements and use of force of reports completed regarding the incident. The Eleventh Circuit has held that such evidence is generally insufficient to "blatantly contradict" a plaintiff's allegations because it does not "definitively establish[] what happened and what did not [happen]." *Sears*, 922 F.3d at 1208-09 (explaining that incident reports, affidavits, and other "documentary evidence [that] consists mainly of various forms of the[] [corrections officers'] own testimony" was insufficient to "blatantly contradict" the plaintiff's description of the incident); *see also Rivera v. LeBron*, 824 F. App'x 838, 842-43 (11th Cir. 2020) (reversing the district court's grant of summary judgment in favor of corrections officers when there was no video evidence and the evidence in the record primarily consisted of statements that "merely pit[ted] the correctional officers' word against an inmate's") (cleaned up).

When the evidence in the record is viewed in the light most favorable to Plaintiff (as the Court must do at the summary judgment stage), there is a "sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

Accordingly, FDOC Defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.[1]

### B. FDOC Defendants are not entitled to summary judgment because of qualified immunity.

FDOC Defendants have also argued they are entitled to summary judgment based on qualified immunity. There is no merit to their argument because the Court has determined that FDOC Defendants are not entitled to summary judgment on the underlying excessive force claim. As the Eleventh Circuit has explained, that ends the qualified immunity inquiry because:

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no

---

[1] Plaintiff's complaint does not allege that Defendant McCranie actually placed her hands on him. Rather, Plaintiff claims that Defendant McCranie authorized the use of force and failed to intervene when the other officers used excessive force against him. Liberally construing Plaintiff's complaint (as is required for *pro se* litigants), the Court treats Plaintiff's claim against Defendant McCranie as a failure to intervene claim. "'An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force' can be held liable for failing to intervene, so long as he 'was in a position to intervene yet failed to do so.'" *Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)). When the evidence is viewed in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Defendant McCranie should have intervened to protect Plaintiff from excessive force by the other FDOC Defendants. Defendant McCranie (a supervisor) was present during the cell extraction and witnessed the events unfold. If they unfolded as Plaintiff says they did, then a reasonable jury could find that Defendant McCranie should have intervened. Thus, Defendant McCranie is not entitled to summary judgment.

room for a qualified immunity defense when the plaintiff alleges such a violation.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (cleaned up). Thus, if "the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment . . . . [then] that is the end of the inquiry." *Id.*; *see also Bowden*, 576 F. App'x at 955 (explaining that when there is a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity would be unwarranted); *Ash v. Landrum*, 819 F. App'x 770, 773 (11th Cir. 2020) (same). Because the Court has determined that Plaintiff's excessive force claim is sufficient to survive summary judgment, there is no basis for granting summary judgment because of qualified immunity.

### III.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that FDOC Defendants' Motion for Summary Judgment, (Doc. 69), be **DENIED.**

At Pensacola, Florida this 9th day of January 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**